Court of Appeals for the 4th Circuit. Please be seated. Mr. Wright, whenever you're ready, we'd be happy to hear from you. Good morning and may it please the court David Wright with the law firm of Comms Smith and Collins here on behalf of the American Federation, State, County, and Municipal Employees, Maryland Council 3. The acronym there is AFSCME. I'll be referring to AFSCME, who represents some 26,000 employees of the State of Maryland in its executive branch and in its higher education institutions. Those individuals have come to work to the state for the benefit of not only their salary, but benefits, post-employment benefits that are at issue here. In particular, this case has to do with post-employment benefits. And very particularly, the prescription drug benefit that's been set by law has been in the Maryland code for the better part of 25 years. The issue before this court is whether that benefit, that promised benefit, which has been deemed contractual by the district court, is in fact in the nature of a unilateral contract, or whether it's a contract which active employees may bring a claim for impairment and breach. I'm sorry to interrupt, but before you get to the merits, can I just ask a threshold question? I don't understand why partial judgment under 54B was granted in this case. And the district court didn't make any findings, even though you're supposed to explain the reasoning under Braswell for why partial judgment was appropriate in this case. Can you tell me why we have to hear this appeal perhaps more than once? Well, that certainly wasn't the intention, Your Honor, but Rule 54B certification was examined and deemed to be the appropriate mechanism given the stakes here and given the particular controversy between a large body of active employees and the state of Maryland through its law. That controversy, that finding, I believe, is the threshold finding that the judge made, the judge was said he made. And I don't understand the law to require more than that for finding that it is of such a character and such consequence that it is rightfully placed before this court. I mean, just even in terms of finality, am I wrong about this? Didn't you have two bases for your state law contract claims? One is the statute creates an enforceable obligation, but the other is that you're on the contract's collective bargaining agreements, too. No, the collective bargaining agreements are not a basis for the action here. This is purely founded in the contract created by statute. There is mention of the memorandum of understanding, which are the collective bargaining agreements, in the complaint, but not a claim under them. They are notable insofar as our view of them is that they emphasize the continuity between employment benefits, because the MOUs lock both in, and post-employment benefits. Go next. If you are claiming a contractual right here, and it seems that you are, how do we get around the Supreme Court's case in National Railroad Passenger Corporation? Your Honor, I don't believe the National Railroad is the dispositive law here. I think that we have a purely impairment issue and an anticipatory breach issue. Those are necessarily viewed through the lens of Maryland law, and Maryland law is simply the one-two punch of City of Frederick. Okay, so assume that we do think National Railroad is the dispositive law. What's the answer to Judge Wilkinson's question? Candidly, Your Honor, it's not been briefed squarely at this moment. So is there any language in the text of Sections 508, 509, or 509.1 that makes it unmistakably clear that those statutes intended to create a contractual right to prescription drug benefits? Yes, the language is correct in Judge Massetti's decision insofar as the words entitlement create a contract. So it's the word entitlement that makes it unmistakably clear in your view that a contract was created? Yes, yes, Your Honor. That is so. Judge Massetti got that right. And I don't believe that issue at this point is squarely before this Court, given the procedural posture. Well, oh, right, no. Well, in your joint submission to certify the case, you included the issue of whether Maryland law created an enforceable contract. Well, whether it's an enforceable unilateral contract. The error in Judge Massetti's analysis is that he went so far as to look at two cases that set up this notion of a unilateral contract, which don't bear on public employee benefits and don't really go to the issue at all. The notion of a unilateral contract is a square peg in this very round hole. If you look at Quinn, Quinn is the landmark decision that controlled for so long since 1977. And there's a thoughtful analysis about how you induce and entice employees into employment and how you maintain that inducement and how in the state of Maryland in 1977- But if you are hanging your hat on the word entitlement, I think your point, the Attorney General's brief here points out that the word entitlement is sprinkled all through the Maryland Code. That'd be a very far reaching opinion to say that any state law that uses the word entitlement has created a binding contract. Certainly most state courts across the country haven't done that. And the reason I think is that in order to get political credit, legislatures often include the words entitlement and all the rest, they're lobbied hard by the different forces at issue. But when you go and look at National Railroad, the basic premise of that decision is that legislatures don't negotiate contracts, legislatures pass laws. And in order to have the legislative function properly, you have to go back to what the legislature's function is. It's not contractual. That's an executive branch function. The executive branch has all kinds of contractual obligations. That's where we get the word independent contractor. But the legislature's in a different form of business and the Supreme Court is saying, don't put handcuffs on legislatures so that subsequent legislatures are in concrete and can't respond to changing electoral mandates, whether they be from a liberal direction or a conservative direction. The Supreme Court's reasoning behind the presumption against binding contractual commitments is very strong. And that is that the reasoning is that it wants to preserve flexibility in the legislative process and to give successive legislatures a chance to respond to changing political demographic conditions. Your Honor, I greatly understand and respect your comments, but in this regard, under Maryland law, in an employment environment, this served the benefits at the time of while working were an inducement to work and a contract that you will get paid your salary while you work. And there was also an element both in the pension world and in the other post-employment benefits world that says that if you are accruing benefits or you're investing along, that is in the nature of a contract. And Maryland law certainly says we're going to understand that contract. Quinn says we're not gonna rope-a-dope public employees or let public employees or public employers rope-a-dope employees by promising them a pension, healthcare or drug benefits and have them serve- You're lumping a lot of different things there. And you're lumping pensions and healthcare benefits together and they're not the same thing. They're very different. And you need to look no further than the law of ERISA to understand the difference, the different ways in which courts treat pension and social welfare benefits. It says they're just different things here. I worry about destroying legislative flexibility because this case underscores the need for it. There was a donut hole in the Medicare prescription drug benefit and the law was passed to cover the donut hole. And then when the donut hole was fixed by the Affordable Care Act, the Maryland legislature sought to adapt to that new circumstance. And you're saying, no, we're going to handcuff the legislature and it cannot respond to changes in federal law. And because legislatures try to dovetail state and federal benefits all the time. Your Honor, quite bluntly, we're not saying that the legislature  That is not the law of Maryland. That's not what the Cherry Court said. The Cherry Court was very clear. And we believe in the Cherry decision that reasonable modifications when justified are appropriate. That is certainly part of running the government, part of running the democratic society. The question is, do we- Yes, let's talk about Cherry for a minute. That was a pension case. It had different language. It had more definite contractual language. It was a defined benefit for a defined period of time. We have a very different situation here. As the Maryland Attorney General points out, this isn't a defined benefit case. It's not a pension case. And they say, well, it's in the nature of a delegation to the budget directive. But we would never at federal common law find a contract here where the terms of the contract were so very unclear. We don't know what the amount of the benefit was. We don't know how the subsidy is to be calculated. We don't know what medications are to be covered or to what extent. And just going back to our basic common federal common law that we learned about in our first year in law school, those do not form contracts where critical terms are not agreed upon. And you're asking us to define a contract and go against national railroad passenger situation where the critical terms are missing. I mean, that's asking a lot out of a court. Your Honor, I would point you to 2508 of the SPP, which defines the current terms as they were going into this melee and this dispute. That is where the General Assembly did its last modification. That modification followed, we have establishment of the plan in the early 90s, coextensive with what current employees get. That is a necessary definition. That's a fine way to define the benefit. Then in 2004, the state of Maryland doubles down saying, we're not gonna leave our retirees and our future retirees in the lurch when Medicare Part D has a donut hole. We're going to prevent you from suffering that fate. In 2010 and 11, the legislature modifies the contract again, sets it forth very clearly what the new retiree drug benefit is, what the access is, what the premiums are, premium share, the fact that you have same copays, same premiums. They say, rest assured, this is what you will get as retirees. We're not going to throw you to a federal system that is not yet in focus and not yet working. It's only in 2019, in 2018, when the General Assembly goes too far and says, now we're going to pull that back. We told you you were safe, and now we're gonna pull back that benefit, pull back that contractual right. And now, if you've been anticipating that you will always have good drug coverage. That's right. But that argument can be made to any, to many, many changes in law, because what you've just described are reliance interests, and they are reliance interests around law. But those reliance interests don't nullify what the Supreme Court is saying about the nature of legislative authority in National Railroad. And the essence of our democracy is this, that you lose today, but those who lose today still have hopes of winning tomorrow. And that's what allows us to accept adverse political outcomes. The idea that the issue is still open for change tomorrow. And if somebody impeaches a reliance interest, they have to pay the political price. And I dare say that the union that you represent would go after the legislature as hard, who took that point of view. But it just seems to me that to allow one legislature to set terms in concrete for the future, you destroy budgetary flexibility. And you put courts in the nature of hamstringing legislative authority, which as I say, once again, the Supreme Court has told us that in the absence of an unmistakable language, a strong presumption belongs with the ability of the legislature to change situations as they arise. That doesn't affect the executive branch. That executive branch can enter into binding contracts, but that's different from legislative authority. Those are different. Your Honor, might I respond briefly, although I'm past my time? Would you like to just, you can do, why don't you think about that and respond in rebuttal? But if either of my colleagues has questions, I'm perfectly willing to, obviously, to let those questions be asked. Judge Thacker, do you have any questions? I do not. Judge Harris? I'll address those matters in rebuttal then, Your Honor. Thank you. Mr. Dietrich, I think you're up next. Thank you, Your Honor. May it please the court. Frankly, there's not a lot I can add to what Judge Wilkinson has said to my colleagues. Can I ask you then to just go back quickly to the 54B issue, because I am troubled by this. We have a decided presumption against piecemeal abetting. And it's not clear to me why we're hearing this appeal before the case is over. And the district court didn't make any findings. I mean, he did cite the standard, but you're supposed to explain it under the Braswell factors, and we don't have any of that here. So why was certifying this appropriate? Your Honor, this is a final judgment. It's a final judgment as to AFSCME and their claims. Right, but the case isn't over, and the presumption is we're gonna hear the whole case at once. So why are we gonna have to hear this appeal more than once? Certainly, right, the presumption is that all claims will be heard together. AFSCME's claim is separate and distinct from the claim presented by what we call down below the Fitch plaintiffs, the retirees. These are active employees, and they've been, lack of a better word, kicked out of the case because the district court- Yeah, but usually those plaintiffs wait, and then when the case is over, we hear one appeal. So what is the special injustice that would be done if we just heard this case in the normal course after everybody's claims were finished, and we could hear all of the questions at once, and we would not be in a position where we might issue a decision that turns out to be kind of moot because it turns out all the modifications here were reasonable anyway. Well, Frank, I think that the issue here, the dispositive issue here, whether there is a contract, because speaking of Rule 54B, it involves claims, not issues. So if we are here properly in 54B, we're here under a claim, under AFSCME's claim, which encapsulates all of the issues that give rise to that claim. That is a dispositive claim that would eliminate the need for that part of litigation and resolve certainly that part of litigation, and therefore fulfill the no just reason for delay standard. But it's not supposed to turn on whether or not you're going to win on appeal, but that's okay. I will, yeah. It is dispositive. It is unfortunate that the district court didn't explain its reasoning in this case. We have said in cases like Braswell, please explain to us why you have done this, and we just didn't get that here. I understand, Your Honor. So moving to the issue that is for this court with regard to the claim that hinges on whether there is a contract, and at risk of repeating what Judge Wilkinson has said under a National Railroad passenger, there has to be an unmistakable- I'm sorry. I just have one quick question about National Railway. So that's a federal law case, and this is a state law case. Is it your position that like every state in the country is required to adopt that presumption as a matter of how the state court will construe its own statutes? Because some states have not adopted it, or they've adopted it in a slightly different way. They haven't called for a... The intent doesn't have to be expressed. You can kind of infer it from the circumstances. They just treat it as a normal statutory construction question. Sure. In our interpretation, it's an element of the law that is derived from sort of the federal nature of constitutional nature of legislatures in the constitutional scheme.  however they want. If a state wanted to have a legislature that entered into contracts willy-nilly, they could do that, I assume. And that's certainly true, but Maryland has not done that. Maryland has not- Has Maryland adopted this presumption? Maryland has not adopted this presumption, and it's our position that by not... Having not explicitly adopted or not adopted this presumption, that the presumption is there because it's an element of the constitutional scheme,  Should we ask the Maryland courts? Should we certify this case to Maryland? That's an option, and the state would not be opposed to this court certifying that question to the Maryland Supreme Court at this point. But it's our position that absent Maryland law saying that the presumption does not apply, that that presumption does apply, and the unmistakability doctrine would apply in this case to show that there's not a contract because there's nothing in those statutes that give rise to a contract. Well, it does say entitled to. Yes, and I understand- So what does entitled to mean from your viewpoint? It means that if... Go ahead. Under the law, as the law exists, that entitlement is there, but that entitlement is subject to amendment  For example, entitlement is throughout the code, including, for example, with things such as state holidays, that the statute, and unfortunately I don't have the exact site for the statute, but there's a statute that entitles, and using those words, state employees to certain holidays. And under the theory here, it would be that the state could never retract a holiday or change a holiday or move a holiday around  Isn't it reasonable- That's what you've got. Go ahead. Isn't it reasonable for an employee to expect to receive upon their retirement the benefits that they were statutorily provided at the time of their employment and not have it yanked away from them? Well, in this case, with retirement benefits, they have not yet received those benefits. In the same sense as, say, a pension, which you are- You're entitled to them. Entitled. The statutory language provides that, but it's subject to amendment by a subsequent legislature. Have you done a search in just how many times the word entitled appears in the Maryland Code and in what context? Frank, I think we did, either me or one of my colleagues did that. I don't have the numbers of the statutes. It's actually, I think, in a prior pleading, if I'm not mistaken. But it's all sorts of contexts, including what I've just said with regard to holidays, something as mundane as holidays, that certainly shouldn't be set in stone in terms of future legislatures being able to- Well, and there's a political reason that legislatures use the word entitled because it helps to draw more votes. But at the same time, to hold that entitlement set the benefits in stone and prohibited subsequent legislatures from responding to changing circumstances, we would be destroying or impairing the flexibility of the Maryland legislative process to an extraordinary degree. And what you would have is one legislature after another seeking to ensconce its views permanently and for all time. And there would be a legislative rush to the kinds of language that courts have held would bind subsequent legislatures. And so that rush on the part of one legislator to disable a subsequent legislature just rigidifies the whole Maryland legislative process. The consequences of this can't easily be underestimated. You know that you're not the Maryland legislature, but you are speaking for the Maryland Attorney General who has a decided view of what circumventing National Railroad would do to the Maryland legislative process. And surely the Attorney General's view on Maryland law is worth something. Is it a definitive ruling from the Maryland Court of Appeals? No, but does it make sense? Yes, in terms of what other state courts are doing. And I think also in terms of Quinn and Cherry and just in terms of what I think respectfully are the fundamental differences between legislative and executive powers. Legislatures don't negotiate contracts, they pass laws. The executive branch negotiates contracts. We have all of these cases about who's an employee and who's an independent contractor. And we have contracts galore that the executive branch enters into and execute. But executive power and legislative power are also different and each should be left to its spare. I agree, Your Honor. But counsel, do you, I mean, is it your position that the Maryland legislature may not create like oversteps its sphere if it somehow does write contractual language into a statute? I mean, you agree that legislatures can do this, right? You just think. Sure, absolutely. Okay, I just want to make sure I understand everyone's position. And I think we need to look no further than this court's Cherry decision from 2014 where it was looking at an ordinance from Baltimore City. And in that case, the ordinance said that employees upon employment shall thereupon be deemed to have entered into a contract with Baltimore City. Clear language of contract. That's what National Railroad was looking for. And to say that overcomes that presumption. So certainly the state is not arguing that it can never be done, that it hasn't been done. Because with regard to pension benefits, as we say throughout our brief, pension benefits have been determined, rightly so, to be contractual elements because they not only have sort of external elements of being a contract with the mutual assent and the bilateral nature of it, but also with respect to the language used to create those benefits. And to build on Judge Wilkinson, what she said, I do think that this is at heart a political question in the sense of what benefits there are. And that political question is, I think the question that she posed to my friend on the other side, to answer why isn't this a question of political power, of what the legislature wants to do going forward and how they can change and how they can adapt to the circumstances, especially with regard to at first saying, notwithstanding Medicare, we want to ensure that there is still a plan. And we're speaking to the secretary to include that plan. But then when the Affordable Care Act comes around, the doughnut hole is closed or is slated to be closed, that the legislature has that opportunity to change that because it didn't enter into a contract, it just set a policy. Can I just ask you a question about the district court's theory in this case, which was that, yes, there's a contractual obligation created by the statute, but it hasn't vested yet in active employees. Was that a sort of a sua sponte theory by the district court or was that something you argued in front of the district court? The state argued it down below. Don't get me wrong. The state's main argument is, was, always, well, I won't say always will be, is now that there is no contract at all. But you also argue that even if there is one and the unilateral contract, was it because it's a unilateral contract? Was that your argument? I'm just trying to figure out where this other argument sort of... I'd have to check. I'm not sure that the state used the terms unilateral contract. Okay, so that was the part that was the dispute. That it related to the nature of these benefits and that they only came into being upon retirement. And so that, for example, someone cannot enroll in the retirement program until they are retired. And so under Saxton and the other Maryland cases, that because you couldn't enroll because those benefits didn't come about until you were in fact retired, that the legislature could change those benefits up until that point. I have a little trouble reconciling the vesting theory as a, I understand, a minor part of your argument with Cherry. Cherry seems to make pretty clear, I thought, that even if your benefits haven't vested, the sort of right to the benefits, that does vest when you are hired. The statute contractually guarantees you those benefits. And I understand you don't think the statute does that here, but I'm having trouble kind of on the sub theory, making it work with Cherry. And I don't know if there's something obvious I'm missing. I think to hopefully make it simple, I think all roads lead to the fact that Cherry is a pension case. Quinn is a pension case. And as we've laid out in our brief, those pension cases are different because those are in fact contractual benefits as opposed to- Right, I understand why they might be, those things are different as to whether there is a contractual benefit. But if we're assuming now, just hypothetically, that there, as the district court did, that there is a contractual benefit created by the statute, then I don't understand why under Cherry, it doesn't vest just like the contractual benefit then when you're hired. I think it's just, again, due to the nature of the type of benefits. Because they're pension benefits, they've been there since the beginning. You pay into it, you're told, there's a formula, it's defined benefits, as opposed to variable benefits that only come into being upon a certain event. And- Arisa takes them very differently for just the reason that you said, that these are a long-term reliance interest. They're more often, not invariably, but they're more often defined benefit plans. They're more often, the details are sketched out to a greater degree than here in terms of coverage, in terms of benefits, and the like. I think in terms of the long-term reliance interest and the contributions that employees almost invariably make, it's a shared employer-employee obligation. They're often defined benefits plans. They don't have the looseness that this one, the looseness in the terms that this one does. But I think throughout the law, social welfare benefits and pension plans are handled very differently, very differently. And as they should. But the state's position all comes down to the language that is used to create those and the difference between them. And the fact that when you have the prescription drug benefit plans, you look at the stark difference in the language used. And how it's setting out law and policy and not contracts. And just so to go back to that 2004 law, again, and that's the one that provides that the secretary shall continue to provide a plan. That's language, it's not speaking to potential employees, active employees, et cetera, or retirees. It's speaking from the legislature, telling the executive branch how to execute the law until the legislature deems otherwise, which they did. And that's at the heart of this case in terms of defining, as Judge Wilkinson, as you've said, the relationship between the executive branch and the legislative branch and those roles in terms of setting policy and not setting contracts. And if there is going to be a contract, making sure that the legislature has intentionally done so through unequivocal language, unmistakable language. It wouldn't necessarily just be the language, would it? It would be whether the terms of the contract are clear. We all know that the contracts are not formed if there is no mutual assent to the terms. And with pension benefits, you have the terms generally much better defined. And what you have here are just a complete looseness on the critical amounts, the amount of the subsidy, how it's calculated, what it covers, what extent it covers. They're just, so I understand the point about National Railroad and I understand the point about the legislative language, but there's also a common law contract notion at the heart of this, as well as separation of powers. And the common law contract notion is that if you're going to have a contract, the parties have to understand what the terms are. There has to be some core of mutual assent. And again, I agree with what you say. Counselor, can I ask you a question about that? And Judge Wilkinson can answer too. I don't understand why it's not sufficient that the promise is you'll make whatever active employees are making. Like you may not know the amount, but that's what everybody agrees. You're going to get whatever the active employees are making, it's the continuity that matters. I just don't understand why that can't be a contract term. That seems clear enough to me. Whatever that guy makes, I make too. And certainly that could be a contract, but it's the language, it's the presumption under. No, I understand, but I thought that this was about a separate point, that the terms here were too sketchy. There was no mutual understanding about what was promised, but I thought it was really clear. You make the same amount as active employees. And right, that gets a little bit more into it in terms of what the language says. It says, it talks about a subsidy, but what we're really talking about, what AFSCME is talking about is benefits. So what is the relationship between the subsidy and the benefits? Can you reduce the benefits? Even if you can't reduce the subsidy, what is the subsidy good for? What can it be used for? What benefits are you entitled to? Just like, and then going briefly to the 2004 statute, it talks about a plan. There's nothing more to it than the secretary shall provide a plan. Now, whether it's under National Railroad or whether it's under common law, Maryland law, contract law, what is the plan? What does that get you? What does that contract look like when the rubber hits the road? And you have to say, this is what Maryland is obligated to. This is helpful. So you're saying that when it says that you're entitled to the same, if it said, say it had all the contract language, as a matter of contract, we hereby commit and we will never change our minds that you are entitled to the same state subsidy allowed a state employee. You're saying that's not a clear contract because the subsidy allowed, there could be a miss on, people might not agree on what is the subsidy that is allowed the state employee. Or I... Again, so why don't I just ask the question this way. Say this was all prefaced by charitable act. As a matter of contract, the state hereby commits forever and indelibly, it will not be changed by any future legislative action that a retiree is entitled to the same state subsidy allowed a state employee. Would you say that's not a contract, notwithstanding the contractual language because the terms aren't clear? Again, I think what we're fighting over here is drug benefits and not this subsidy. So yes, you would say that that's not a, I just, yes or no, is that clear enough to be a contract or no? It's not a contract. It's not a contract to the extent that the state would still be able to change the benefits that those subsidies were entitled to, to be used against. And thank you, Your Honor. Judge Thacker, Judge Harris, if either of you has any more questions, I would be happy to have you ask them if you have any more. I do not. All right, well, let's hear from Mr. Wright in Robotoville. Maryland, to its credit, is obviously more generous than the federal jurisprudence and more generous in its benefits. And that's what's at contest here. It is incredibly valuable for an employee to understand they will have continuity of benefits and that it's spelled out clearly in 2508D about what you get. Maryland offers good benefits to its employees to keep them there. And Maryland jurisprudence, to its credit, has said, to Judge Wilkins' point, that they're not gonna be subject to the whims of different legislators and different executives, that if you come and you work for the state of Maryland, and you work year over year, and you work here for five or 10 or 25 years, you will get access to the same good benefits in your post-employment because that is such a valuable and necessary right. And it necessarily needs to be a stable right. And Cherry reaffirmed that just 18 months ago, that Maryland doesn't make its public employees suffer by having good benefits yanked away when they've been earned pursuant to the- May I ask how the suffering is here? Because the only reason that the Maryland legislature, or the primary reason that the Maryland legislature adjusted the situation was because the Affordable Care Act came in and covered the donut hole. In other words, part of the gap that led to the earlier legislation was cured by federal law. And one of the things that state legislatures and federal legislatures do, they try to understand what benefits each is afforded. And that's to say that the Affordable Care Act was a remedial piece of legislation, which gave states the authority to make the kind of adjustments that Maryland's making here. And Maryland's benefit, Your Honor, was better than Medicare. And what caused the consternation of these retirees and these employees was looking at their drug costs and saying, under Medicare, I am not gonna do as well as I did with the state. Now, whether that modification is an appropriate modification, whether the state's bridging of the gaps and reliance on Medicare is a reasonable modification, we welcome that debate. That is an appropriate debate under Maryland law. There is not daylight here with the case of Cherry. We should be in front of a court adjudicating, is there harm suffered by the retirees? Is there- I'm wondering, Mr. Wright, if you're not appearing before the wrong body, because I think all of us have been to legislative hearings and the subject of those legislative hearings is so often what level of benefits is going to be provided. Because the state legislatures, the state legislatures are the essential guardians of the purse. They hold the purse strings. And there have been, I know, I have been in and listened to many legislative hearings on the appropriations process. And they deal with different terms and adjustments to, of all kinds, including state employees. And salary adjustments are made and not just in general welfare programs such as housing and food stamps, but in terms of state labor forces. And you're just taking the essential power when this becomes a matter for the courts and not for legislative hearings. I just wonder if we are countenancing a fundamental shift or a very basic shift of power. And I can't, it's almost impossible to underestimate the kinds of consequences this would visit long-term if we got this wrong. Your Honor, I've been at those legislative hearings too. And AFSCME does not want to bankrupt the state of Maryland. These active employees do not want to bankrupt the system. What they want are the benefits that have kept them serving the state of Maryland. And if those need to be adjusted, if they need to be modified in some way, they are willing to have a fair debate about that. And in modifications in the past, which were less drastic and less controversial, have gone through. The legislature has acted, that has been accepted. These particular modifications, these modifications seem to go too far. And Maryland courts say, you as an active employee and you as a retiree and you as a vested employee get to go and measure that harm in front of a judge. And that is the balance of power that the Maryland courts in Maryland law under Quinn. I don't read those cases that particular way, but I don't, well, I think we're going over the same ground, but I feel like a lot of what you've said may be a decent argument, but it's a policy argument. There are difference, you know, there are difference between political arguments and policy arguments. And what is said in concrete and for the future in federal law, I'm just, but go ahead, do you have some concluding statements you'd like to make? Yes, Your Honor, and to the entire court, we asked for the district court's decision to be reversed, AFSCME and active employees who have been working for 10 or 15 or 20 years and relying on this should have every opportunity to go and measure precisely the loss that could be suffered and whether that is a reasonable modification. That's what we asked the court to do. We believe that the issue is properly before the court and that it's unfortunate the district court has proceeded. There needs to be resolution on this. General assembly and the players all are interested in a resolution from the courts on this. And that's part of the reason it's here on 54B is candidly the general assembly has deferred action wanting a judicial ruling. That's part of the dynamic here. It's part of the practical aspect of what's going on here is that if you look through the legislative actions and search the Maryland code and the session laws of Maryland about how they viewed this, they want a judicial determination to understand what's appropriate for them to do and what's not. Mr. Wright, thank you very much. Hold on before you leave. Judge Thacker or Judge Harris has further questions for you. You should be prepared to answer them. If you could just actually just finish that thought about how one of the reasons maybe this was certified under 54B is because the legislature is deferring action while they wait for a ruling. Yeah, I mean, it's hard to read the mind of a general assembly in a body that's hundreds of people. But in enacting the replacements, they said those replacements will not go into effect until this is finally adjudicated. And then as long as this is left unresolved, the courts, the general assembly is not gonna act. We now have in play on the books, but not operating a law that is now post hoc and not kind of effective. Reading my crystal ball, the general assembly, and I don't know that this court looks to the papers that have been filed in the district court, but there was a status report yesterday that says that the parties are interested in settling this matter based on the fact that the political circumstances have changed with the new governor of Maryland, with the new general assembly. So there are very candidly and frankly, a lot of moving parts here. AFSCME's view of it is that- Well, you're making Judge Wilkinson's point and opposing counsel's point that this is a policy argument and not a contractual argument. Well, that they wanna hear from you about the strength of their contract and the contours of how much they can change. That finally adjudicated doesn't mean adjudicated in your favor. No, I'm looking for- It just means one way or the other. Your Honor, I'm a union lawyer. All I ever want is process. I want the opportunity. Oh boy. What active employees want is to understand whether they have given up more than they needed to give up in this policy change. And Maryland protects them from a drastic policy change. That's how I read Cherry. That's how I read Quinn, which really took an academic approach saying, looked at this and how does public employment work? What is it about public employment? It's continuity. It's stability. It's the fact that you come, you're gonna get your pension. You're gonna get your retirement. You're gonna get your health insurance. You're gonna get your health insurance post-employment. All of that fits together. And that is different. It's different from ERISA. It's different from the private sector. It's different from many landscapes. It's about continuity. Mr. Wright, we've given you a good bit of extra time and you've taken full advantage of it. You're my best. I wanna thank you, Mr. Wright and you, Mr. Dietrich. I think you both made fine arguments and we appreciate it. And we will recess for five minutes and then we will come back in conference. Thank you, Gordon. It's honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Stephanie D. Thacker, Pamela A. Harris